Filed 4/2/13  P. v. Urosevic CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENI UROSEVIC,<br><br>    Defendant and Appellant. | H037496<br>(Santa Clara County<br>Super. Ct. No. C1108974) |

## I.  INTRODUCTION

Defendant Deni Urosevic pleaded no contest to grand theft (Pen. Code, §§ 484, 487, subd. (a))[1] and receiving, concealing, or withholding stolen property (§ 496, subd. (a)).  He also admitted that he had served three prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to county jail for two years pursuant to section 1170, subdivision (h).  The court ordered that 16 months of the two-year term be served in jail and that the remaining eight months be served under "community supervision" (hereafter, sometimes mandatory supervision) with various terms and conditions (see § 1170, subd. (h)(5)(B)).  The court also ordered defendant to pay a monthly supervision fee of $110 pursuant to section 1203.1b during the eight-month

---

[1] Further unspecified statutory references are to the Penal Code.

period of supervision, a suspended parole revocation restitution fine of $800, and a criminal conviction assessment of $80.

On appeal, defendant contends that the monthly supervision fee of $110 is unauthorized and must be stricken and that, even assuming such a fee is statutorily authorized, there is insufficient evidence to support a finding of his ability to pay the fee. Defendant also argues that the parole revocation restitution fine is unauthorized and must be stricken, and that the criminal conviction assessment must be reduced to $60. Defendant further contends that his appellate claims have not been forfeited and that, to the extent they have been forfeited, his counsel rendered ineffective assistance.

For reasons that we will explain, we conclude that the monthly supervision fee and the parole revocation restitution fine are unauthorized, and that the criminal conviction assessment must be reduced. We will strike the unauthorized amounts, reduce the criminal conviction assessment to $60, and affirm the judgment as so modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement officers conducted a search of defendant's residence and found an Apple iPhone.[2] The iPhone had previously been reported lost or stolen by the victim in 2011. The victim last had the phone while at a bar with defendant. Sometime after the iPhone was located, defendant admitted to taking a laptop computer, which had been reported stolen by another victim in 2011. Defendant led law enforcement officers to the location of the computer.

In July 2011, defendant was charged by information with grand theft of a laptop computer (§§ 484, 487, subd. (a); count 1) and receiving, concealing, or withholding stolen property (§ 496, subd. (a); count 2). The information further alleged that defendant had served three prior prison terms (§ 667.5, subd. (b)).

---

[2] The facts are taken from the preliminary examination.

2

On September 27, 2011, after count 2 was amended to clarify that the property at issue was an iPhone, defendant pleaded no contest to both counts and admitted that he had served three prior prison terms. Defendant entered his pleas and admissions with the understanding that he would receive a two year sentence, of which 16 months would be served in custody in jail and the remaining 8 months would be served under "community supervision," and that he would be required to pay a "community supervision" fee of up to $110 per month.

In a waived referral memorandum, the probation department recommended the imposition of, among other amounts, a "Community Supervision Fee" not to exceed $110 per month pursuant to section 1203.1b.

At the October 21, 2011 sentencing hearing, defense counsel objected to the "community supervision fee." Counsel argued that defendant's sentence, which was going to include mandatory supervision under section 1170, subdivision (h), was "similar to parole rather than probation." According to counsel, defendant "can't reject the supervision," and thus it was not "fair" to subject him to a fee for such supervision. The trial court stated: "As indicated in chambers I'm going to overrule the objection." The court sentenced defendant to county jail for two years pursuant to section 1170, subdivision (h). The sentence consists of the middle term of two years on count 1 and a concurrent middle term of two years on count 2. The court struck the punishment for the prison priors pursuant to section 1385. The court ordered that 16 months of the two-year term be served in jail and that the remaining eight months be served under "community supervision" with various terms and conditions (see § 1170, subd. (h)(5)(B) [authorizing mandatory supervision]). The court also ordered defendant to pay a "community supervision fee" of $110 per month pursuant to section 1203.1b, a suspended parole revocation restitution fine of $800, and a criminal conviction assessment of $80.

## III. DISCUSSION

### A. *Supervision Fee Under Sections 1170, subdivision (h)(5)(B)(i), and 1203.1b*

### 1. Background Regarding the Realignment Legislation

The 2011 Realignment Legislation (Stats. 2011, ch. 15, § 1), "together with subsequent related legislation, significantly changed the sentencing and supervision of persons convicted of felony offenses." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 668, fn. omitted (*Cruz*).)  The legislation "shifted responsibility for housing and supervising certain felons from the state to the individual counties.  Thus, . . . once probation has been denied, felons who are eligible to be sentenced under realignment will serve their terms of imprisonment in local custody rather than state prison." (*Id.* at p. 671, fn. omitted; § 1170, subd. (h).)

A trial court sentencing a defendant to county jail under section 1170, subdivision (h) "has an alternative to a straight commitment to jail." (*Cruz, supra*, 207 Cal.App.4th at p. 671.)  The court "can impose a hybrid sentence in which it suspends execution 'of a concluding portion of the term' and sets terms and conditions for mandatory supervision by the county probation officer. [Citation.]" (*Ibid.*)  Specifically, section 1170, subdivision (h)(5)(B)(i) (hereafter section 1170(h)(5)(B)(i)) provides that the court may commit a defendant to county jail "[f]or a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, *during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation*, for the remaining unserved portion of the sentence imposed by the court.  The period of supervision shall be mandatory, and may not be earlier terminated except by court order." (Italics added.)  This latter "portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer" is now known as "mandatory supervision." (§ 1170, subd. (h)(5)(B)(ii).)

**2. Whether a Fee for Supervision Costs May Be Imposed in Mandatory Supervision Cases**

Defendant contends that the monthly supervision fee imposed by the trial court for his eight-month period of mandatory supervision by the probation department is unauthorized and must be stricken.

The Attorney General contends that the supervision fee is authorized by sections 1170 and 1203.1b. The Attorney General argues that "[o]ne of the 'terms, conditions, and procedures generally applicable' to probationers" under section 1170 "is that they pay the reasonable cost of probation supervision" pursuant to section 1203.1b.

In reply, defendant asserts that section 1170 does not give a court the authority to impose supervision fees under section 1203.1b.

To determine whether the ordered fee for mandatory supervision is authorized, we are required to interpret the language of sections 1170(h)(5)(B)(i), and 1203.1b. " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Regarding probation supervision costs, section 1203.1b provides that, "in any case in which a defendant is granted probation . . . , the probation officer . . . shall make a

5

determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . ." (§ 1203.1b, subd. (a).) Further, "[t]he court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer . . . ." (*Id.*, subd. (b).) As we have stated, section 1170(h)(5)(B)(i) provides that when the defendant is under mandatory supervision, "the defendant *shall be supervised by the county probation officer in accordance with* the terms, conditions, and procedures generally applicable to persons placed on probation." (Italics added.) We believe that the language of section 1170(h)(5)(B)(i) clearly pertains to the *nature and manner of supervision by the probation officer over the defendant*—in other words, the nature and manner of the supervision itself—but that the language does not authorize the imposition of *supervision costs* under section 1203.1b to persons placed on mandatory supervision.

Our construction of section 1170(h)(5)(B)(i) is supported by several considerations.

First, probation supervision costs are considered collateral to a grant of probation, and therefore we are reluctant to construe broadly the language of section 1170(h)(5)(B)(i) as authorizing the imposition of supervision *costs* in mandatory supervision cases. Former sections 1203 and 1203.1 long authorized trial courts to require the payment of certain items, such as fines and financial reparation and restitution, in proper cases as conditions of probation. (E.g., *People v. Lippner* (1933) 219 Cal. 395, 398; *In re McVeity* (1929) 98 Cal.App. 723, 726; *People v. Baker* (1974) 39 Cal.App.3d 550, 559.) Under this former statutory scheme, however, *People v. Baker, supra*, concluded that the trial court was *not* authorized to impose a probation condition requiring the defendant to pay for the costs of either his probation supervision or his prosecution. (*Id.* at pp. 559-560.) The appellate court observed that "[j]urisdictions that permit imposition of such costs generally do so under the explicit authority of statute" and concluded that "section 1203.1 explicitly authorizes the imposition of only limited

6

fines as part of probation, which in turn should be oriented towards rehabilitation of the defendant and not toward the financing of the machinery of criminal justice." (*Id*. at p. 559.) After *People v. Baker*, "the Legislature enacted Penal Code section 1203.1b which permits the trial court to require a defendant to reimburse probation costs if the court determines, after hearing, that the defendant has the ability to pay all or a portion of such costs." (*People v. Bennett* (1987) 196 Cal.App.3d 1054, 1056, italics omitted (*Bennett*); *People v. Washington* (2002) 100 Cal.App.4th 590, 595.) Courts have subsequently held that the payment of probation costs under section 1203.1b may not be made a condition of probation because such costs are *collateral* to granting probation. (*Bennett*, *supra*, at pp. 1056-1057; *People v. Hart* (1998) 65 Cal.App.4th 902, 906-907; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321; *People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1401, 1402.) In view of the collateral nature of probation supervision costs, we are reluctant to broadly construe the language in section 1170(h)(5)(B)(i), which concerns the *nature and manner of supervision* by the probation officer over the defendant in a mandatory supervision case, to include the authority of a court to impose the *costs* of mandatory supervision on a defendant.

Second, subsequent to the amendment that added the language at issue in section 1170, the Legislature amended two other Penal Code sections to expressly provide that a particular fine and a particular cost are applicable to mandatory supervision cases, even though similar amounts are already applicable to probation cases. In particular, although section 1202.44 already provides for the imposition of a suspended probation revocation restitution fine whenever probation is imposed, the Legislature amended section 1202.45 to require the imposition of a suspended "mandatory supervision revocation restitution fine" in every case where a person is subject to mandatory supervision under section 1170, subdivision (h)(5)(B). (§ 1202.45, subd. (b).) The Legislature also amended section 1203.9, which provides for the intercounty transfer of probation cases and the payment of costs for processing a transfer, to include

7

mandatory supervision cases. (§ 1203.9, subds. (a) & (d).) These subsequent amendments by the Legislature to expressly provide for the payment of certain items by defendants in mandatory supervision cases, where those payments are already authorized in probation cases, suggest that the language in section 1170(h)(5)(B)(i) should not be broadly construed to include the authority of a court to impose the costs of mandatory supervision on a defendant under section 1203.1b. In view of these subsequent amendments, presumably the Legislature would have expressly provided that supervision costs under section 1203.1b must be borne by defendants in mandatory supervision cases if the Legislature had so intended. If the Legislature intends that supervision costs under section 1203.1b be borne by defendants in mandatory supervision cases, we respectfully suggest that the Legislature make that intent clear in the statutory language.

Lastly, a prior version of section 1170 provided that a defendant's sentence may include "a period of county jail time and a period of *mandatory probation* not to exceed the maximum possible sentence." (Stats. 2011, ch. 39, § 27, eff. June 30, 2011, operative Oct. 1, 2011 [italics added].) Before this prior version became operative, section 1170 was amended to delete the reference to "mandatory probation" and to include the language now at issue concerning a concluding portion of the sentence where the defendant is "supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation." (Stats. 2011-2012, 1st Ex.Sess., ch. 12, § 12, eff. Sept. 21, 2011, operative Oct. 1, 2011; Stats. 2011, ch. 361, § 6.7, eff. Sept. 29, 2011, operative Oct. 1, 2011.) The change in the reference to the latter portion of a defendant's sentence—from probation to supervision by a probation officer—suggests that the Legislature did not intend probation and mandatory supervision to be interchangeable or otherwise identical in all respects.

Based on the foregoing considerations, and the language of sections 1170(h)(5)(B)(i) and 1203.1b, we conclude that the ordered monthly supervision fee of $110 is not authorized.[3] We will order the fee stricken. In view of our conclusion, we do not reach defendant's contention that there is insufficient evidence to support a finding of his ability to pay the fee.

**B.** *Parole Revocation Restitution Fine*

The trial court ordered defendant to pay a suspended parole revocation restitution fine of $800 pursuant to former section 1202.45. On appeal, defendant contends that, because he was sentenced to jail pursuant to section 1170, subdivision (h), he is not subject to parole and thus the parole revocation restitution fine is unauthorized and must be stricken. The Attorney General concedes that the fine should be stricken.

We find the concession appropriate. Former section 1202.45 provided that "[i]n every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." (Stats. 2007, ch. 302, § 15; see § 1202.45, subd. (a).) As we noted, in sentencing a defendant to county jail under section 1170(h)(5)(B)(i), the trial court "can impose a hybrid sentence in which it suspends execution 'of a concluding portion of the term' and sets terms and conditions for mandatory supervision by the county probation officer. [Citation.]" (*Cruz*, *supra*, 207 Cal.App.4th at p. 671.) "[A] defendant sentenced under

---

[3] Defendant also argues that parolees do not pay the costs of their own supervision on parole, and he suggests that the underlying policy reason also applies to defendants on mandatory supervision. Without deciding the merits of this contention, we observe that the Penal Code provides for the payment of various costs by defendants. (See §§ 1203.1c [costs of incarceration when ordered to serve a period of confinement in jail as a term of probation], 1203.1e [costs of county parole supervision after release from jail], 1203.1m [costs of imprisonment in state prison].)

section 1170, subdivision (h) . . . is not subject to a state parole period after his or her sentence is completed. [Citation.])" (*Cruz, supra*, at pp. 671-672, fn. omitted; accord, *People v. Lynch* (2012) 209 Cal.App.4th 353, 357.) "Accordingly, such a defendant is not subject to a parole revocation restitution fine. (§ 1202.45 . . . .)" (*Cruz, supra*, at p. 672, fn. 6.) We will modify the judgment accordingly.

### C. *Criminal Conviction Assessment*

In the waived referral memorandum, the probation department recommended the imposition of a "Criminal Conviction Assessment" of $30 pursuant to Government Code section 70373. At sentencing, the trial court stated that the assessment "should be forty dollars per count for a total of eighty dollars." The court ultimately ordered defendant to pay a criminal conviction assessment of $80.

On appeal, defendant contends that Government Code section 70373 authorizes only $30 per count, and therefore the trial court should have ordered him to pay only $60 for his two convictions. The Attorney General agrees that the ordered assessment should be reduced from $80 to $60.

We find the Attorney General's concession appropriate. Government Code section 70373, subdivision (a)(1) states that, "[t]o ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense. . . . The assessment shall be imposed in the amount of thirty dollars ($30) for each . . . felony . . . ." Defendant was convicted of two felonies in this case. We will order the criminal conviction assessment under Government Code section 70373 reduced to $60.

### IV. DISPOSITION

The judgment is ordered modified by striking the monthly supervision fee of $110, by striking the parole revocation restitution fine of $800 (former § 1202.45), and

10

by reducing the total amount of the criminal conviction assessment to $60 (Gov. Code, § 70373).  As so modified, the judgment is affirmed.


_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:


_____
ELIA, ACTING P.J.


_____
MÁRQUEZ, J.


11